IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RUSSIAN COLLECTIONS, LTD. | : | |
| Plaintiff, | : | Case No. 2:09-cv-300 |
| v. | : | JUDGE MARBLEY |
| ALEXANDER MELAMID, | : | Magistrate Judge Abel |
| Defendant. | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant Alexander Melamid's Motion to Dismiss pursuant to Rules 12(b)(2), (3), and (7), on the grounds that: (1) the Court lacks personal jurisdiction over Melamid, (2) the venue is not proper, and (3) indispensable parties have not been joined. For the reasons set forth below, this Court **DENIES** Defendant's Motion to Dismiss.

### II. BACKGROUND

### A. FACTUAL BACKGROUND

Plaintiff Russian Collections, Ltd.'s ("RC") business is to acquire, own, maintain, invest in, hold for investment purposes, and sell various works of Russian contemporary art. On August 29, 2005, RC entered into an Agreement with Melamid and Mina Litinsky, d/b/a/ Sloane Gallery of Art in Denver, Colorado regarding the purchase of RC of certain paintings by Melamid (the "Agreement"). Pursuant to the Agreement, RC agreed to purchase, and Melamid agreed to create and sell, a series of twelve painted portraits of "hip hop" stars and related personages (the "RC Paintings"). (Agreement ¶ 2.)

Pursuant to the Agreement, if Melamid decides to extend the series beyond the RC Paintings, Melamid agrees to offer any Additional Painting---"painted portraits of 'hip hop' stars and related personages in any size" completed on or before March 10, 2010---to RC before offering it to another potential purchaser. (*Id.* ¶ 3.) Melamid agrees to put the offer in a dated writing, and RC then has sixty days thereafter to decide whether to purchase the painting pursuant to purchase price and other terms to be agreed upon. (*Id.*)

RC alleges that Melamid has created at least eleven Additional Paintings. RC contends that Melamid did not offer these Additional Paintings to RC prior to announcing plans to offer these Additional Paintings for sale in conjunction with an exhibition at Phillips de Pury & Company ("Phillips"). The exhibition was scheduled to occur from May 22, 2009 through June 12, 2009. On March 24, 2009, Melamid offered RC the right to purchase seven of the Additional Paintings. RC had the right of first refusal on those Additional Paintings until May 27, 2009, which was after the Phillips exhibition. The other four Additional Paintings have not been offered to RC. Due to the threat of litigation, Phillips cancelled the exhibition. The exhibition has been postponed until spring of 2010. *See* http://www.bloomberg.com/apps/news?pid=news archive&sid=aPShyYB3N_1M (stating that "[t]he exhibition of works by Russian artist Alexander Melamid that was scheduled to open at Phillips de Pury, London and at the Saatchi Gallery on May 22 has been postponed. . . . Phillips's event, title 'OH, MY GOD,' has been rescheduled for the spring of 2010 "). Provided that the exhibition and sale do not occur until after March 31, 2010, the spring of 2010 exhibition would not be in breach of the contract.

The Agreement further provides that if Melamid and RC fail to reach an agreement in regard to an Additional Painting, Melamid is then free to offer and sell the Additional Painting to any third party:

> provided, however, that until after [March 31, 2010, Melamid] shall not sell such Additional Painting for a price that is less than 90% of the highest retail price reasonably being charged by RC or any gallery affiliated with it for any of the Paintings.

(Agreement ¶ 3.)

The Forum Gallery, a gallery affiliated with RC, has sold two of the twelve RC Paintings to two separate buyers for $300,000 each. (Hoffeld aff. ¶ 5.) The other RC Paintings are currently being offered for $300,000 through the Forum Gallery. (Id. ¶ 6.) RC posits, therefore, that $300,000 is a reasonable price charged for the paintings, and Melamid cannot sell the paintings for less than $270,000. RC contends that Melamid intended to sell the paintings through the Phillips exhibition for a price below this restriction, in breach of the Agreement.

## B. PROCEDURAL BACKGROUND

RC moved for a Preliminary Injunction, seeking to enjoin Melamid from: (1) selling, transferring, encumbering, alienating or offering certain paintings, known as the Additional Paintings, for sale directly or through third parties, including Phillips, prior to offering them to RC, or contracting to sell, transfer, encumber or alienate the Additional paintings directly or through third parties, including Phillips, prior to offering them to RC; and (2) offering the Additional Paintings for sale at prices below the minimum price requirement set out in the Agreement. This Court denied that motion, and in doing so determined that it had personal jurisdiction over the Melamid.

## III. STANDARD OF REVIEW

### A. PERSONAL JURISDICTION

Melamid has filed a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction. The plaintiff bears the burden of proving personal jurisdiction exists. *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir. 1996). This Court held a preliminary injunction hearing, at which evidence was presented on the issue of personal jurisdiction. When an evidentiary hearing is held, the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003).

### B. VENUE

In the alternative, Melamid contends that this case should be dismissed pursuant to Rule 12(b)(3) because venue is improper. A 12(b)(3) motion to dismiss for improper venue will generally be denied so long as the case was filed in a venue allowed under 28 U.S.C. § 1391. *See First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir. 1998).

### C. INDISPENSABLE PARTIES

Melamid's final contention is that this case should be dismissed pursuant to Rule 12(b)(7) for failure to join an indispensable party. Rule 12(b)(7) allows dismissal for failure to join an indispensable party under Rule 19. A party is indispensable if: "'(1) it is necessary, (2) its joinder *cannot* be effected, and (3) the court determines that it will *dismiss the pending case* rather than proceed in the case without the absentee.'" *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) (quoting 4 *Moore's Federal Practice* § 19.02[3][c], at 19-22). Under Rule 19, a person is "necessary" if: (1) the absence of the person to be joined impairs the court's ability to grant relief; (2) the person to be joined claims an interest in the subject matter of the action and not joining the person would impede the person's ability to protect that interest;

or (3) the person to be joined claims an interest in the subject matter of the action and not joining the person would leave one or more of the parties vulnerable to incurring multiple or inconsistent obligations regarding the claimed interest. Fed. R. Civ. P. 19(a). If the Court determines the party is not "necessary" under Rule 19(a), "joinder, as well as further analysis, is unnecessary." *Local 670, et. al. v. International Union, et. al.*, 822 F.2d 613, 618 (6th Cir. 1987). The burden is on the moving party to establish that a party is necessary for purposes of Rule 19(a). *Marshall v. Navistar Intern. Transp. Corp.*, 168 F.R.D. 606, 611 (E.D. Mich. 1996).

## IV. LAW AND ANALYSIS

### A.  PERSONAL JURISDICTION

A federal court sitting in a diversity matter can exercise personal jurisdiction over a defendant if jurisdiction is "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 369 (6th Cir. 2006) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002)).

### A. Ohio's Long-Arm Statute

Pursuant to the Ohio long-arm statute, a suit can be brought against a nonresident defendant arising from the nonresident's "[t]ransacting any business in this state." Ohio Rev. Code § 2307.382(A)(1). "Transact" is interpreted in Ohio as meaning "the carrying on or prosecution of business negotiations . . . and may involve business negotiations which have been either wholly or partly brought to a conclusion." *Kentucky Oaks Mall Co. v. Mitchell's Formal*

*Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990).[1] This Court may exercise jurisdiction over someone who directly transacts business in Ohio or over someone who transacts business by an agent in Ohio. Ohio Rev. Code § 2307.382(A).

Two factors help determine whether a non-resident defendant "transacted business" within the meaning of Ohio's long-arm statute. *Indus. Fiberglass Specialities, Inc. v. Alsco Indus. Prods., Inc.*, No. 3:08-cv-0351, 2009 WL 982805, at *3-4 (S.D. Ohio April 13, 2009). The first factor is whether the non-resident defendant initiated the business dealing. *Id.* at *3 (citing *Paglioni & Assoc., Inc. v. Winnercomm, Inc.*, No. 2:06-cv-276, 2007 WL 852055 at *9 (S.D. Ohio Mar.16, 2007)). This is, however, just one factor to be considered, and the determination is not always dependent on who initiates the contact. *Id.* (citing *Military Supply, Inc. v. Reynosa Constr., Inc.*, No. 19326, 2000 WL 109783, at *3 n.3 (Ohio Ct. App. Jan. 26, 2000)).

The second factor is whether the parties conducted their negotiations or discussions in Ohio or with terms affecting Ohio. *Id.* at *4 (citing *Shaker Constr. Group, LLC v. Schilling*, No. 1:08cv278, 2008 WL 4346777, at *3 (S.D. Ohio Sept. 18, 2008)). If the parties negotiated in Ohio with provisions affecting Ohio, the non-resident transacted business in Ohio, provided there is "some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state." *Shaker*, 2008 WL 4346777 at *3.

RC has established that in approximately May of 2005, Neil Rector, on behalf of RC, was having conversations with Litinsky, an art gallery dealer who was also an agent for Melamid.

---

[1]The Supreme Court of Ohio has indicated that Section (A)(1) is "very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio." *Genesis Ins. Co. v. Alfi*, 425 F.Supp.2d 876, 894 (S.D. Ohio 2006) (citing *Kentucky Oaks*, 559 N.E.2d at 480).

Rector told Litinksy about RC's plans for marketing and selling Russian artists' works of art and also made inquiries as to whether Litinsky was aware of works that she thought would be appropriate for RC to purchase and acquire. Litinsky specifically identified the "hip hop" paintings being created by Melamid as works that would be appropriate for RC to purchase and acquire. Rector then met with Melamid and Litinsky to view the "hip hop" paintings. During that meeting, Melamid indicated a willingness to sell the "hip hop" paintings and gave Rector a purchase price. Rector declined to purchase the paintings because he felt the price was too high. Melamid then indicated to Rector that he might be able to work out a better price for the paintings. These facts show that if either party could be called the "initiator" of business dealings, it was Melamid. Melamid initiated the business dealings by having his agent suggest to RC (who was not pursuing works by Melamid) that Melamid's works would be appropriate for RC to purchase and acquire, by indicating a willingness to sell and providing a purchase price to RC, and then by continuing discussions and negotiations regarding the purchase of the paintings after RC had declined to purchase the paintings.

RC has also established that Melamid negotiated and entered into a binding Letter of Intent and subsequently a binding Agreement with RC, a company organized under the laws of Ohio with its principal place of business in Ohio. Rector conducted negotiations with RC and RC's legal counsel in Ohio, counsel for Melamid, and Melamid's agent (Litinsky). The negotiations were conducted via telephone and electronic mail communications between Ohio, New York, and Colorado. Rector, employed by RC in Ohio, was the keeper of the "master document" for both the Letter of Intent and the Agreement, so he was responsible for making any changes to either document. The Letter of Intent and the Agreement were drafted and

executed by RC in Ohio, then sent to Melamid in New York, and subsequently returned to Ohio by Litinsky on behalf of Melamid.

In addition, RC established that Melamid owes continuing obligations to RC in Ohio. Melamid has agreed to offer any "Additional Painting" completed on or before March 31, 2010 to RC. The offer to RC of an Additional Painting is to be in a dated writing addressed to RC in Ohio. Melamid is obligated to pass title to each RC Painting as provided for in the Agreement. Melamid has agreed to provide certain consent letters from the "hip hop" painting subjects to RC in Ohio. Melamid has agreed to deliver each of the RC Paintings to such location as RC reasonably designates. Finally, all notices, statements, and communications required under the Agreement are to be sent to RC at its Ohio office address.

In sum, the following establishes that personal jurisdiction over Melamid is authorized under Ohio's long-arm statute: (1) negotiations were conducted between an Ohio company from within Ohio, during which documents and emails were sent to Ohio and phone calls were made into Ohio; (2) the Letter of Intent and the Agreement were drafted in Ohio, and while they were being drafted, the master documents were kept in Ohio and all changes to the documents were made in Ohio; (3) the Agreement was signed by RC in Ohio and returned to RC in Ohio by Melamid after he signed it; (4) all notices, statements, and communications required under the Agreement are to be sent to RC in Ohio; and (5) Melamid owes the following continuing obligations to RC in Ohio --- he must offer Additional Paintings, he must pass title to the RC Paintings, he must provide consent letters, and he must deliver the RC Paintings. As a result, the requirements of Ohio's long-arm statute are met, and jurisdiction is proper so long as due process is satisfied.

## B. Due Process

In evaluating whether personal jurisdiction complies with due process, the Court must determine whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." *Bird v. Parsons*, 289 F.3d 865, 872 (6th Cir. 2002). The Sixth Circuit has adopted a three-part test for determining whether the exercise of personal jurisdiction over an out-of-state defendant comports with due process: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or the consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. *S. Mach. Co. v. Mohasco*, 401 F.2d 374, 381 (6th Cir. 1968). As discussed fully below, the Court finds all three requirements to be satisfied in this case.

### 1. Purposeful Availment

One's acts become purposeful if one should have reasonably foreseen that a transaction would have consequences in the forum state. *Id.* at 383. When "a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998); *see also Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006) (holding that the Ohio "transacting any business" standard is coextensive with the purposeful availment prong of constitutional analysis). Due to Melamid's transaction of business in Ohio

and continuing obligations to RC in Ohio, Melamid reasonably should have foreseen that his actions would have consequences in Ohio. He has thus purposefully availed himself of the privilege of acting in Ohio.

## 2. Arise from Activities in Forum State

The second requirement, that the cause of action arises out of a defendant's actions in this state, is satisfied when the defendant breaches a contract. *Wright Intern . Exp., Inc. v. Roger Dean Chevrolet, Inc.*, 689 F.Supp. 788, 790 (S.D. Ohio 1988). "In such case, the breach of the contract entered into with an Ohio resident is the event which does the damages within Ohio and satisfies this requirement." *Id.* (citing *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 229 (6th Cir. 1972)). Melamid is alleged to have breached his contract with RC, an Ohio resident, and this suit arises out of that alleged breach. As such, the cause of action arises out of Melamid's actions in Ohio.

## 3. Substantial Enough Connection to Make Jurisdiction Reasonable

The third requirement is that there be a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. When the first two prongs of the due process inquiry have been satisfied, Ohio courts will "presume the specific assertion of personal jurisdiction was proper." *Cole*, 133 F.3d at 436. That presumption is appropriate in this case. Ohio has a strong interest in resolving suits brought by its residents and has a substantial interest in seeing that its residents get the benefit of their bargains. *First Nat'l Bank, etc. v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982). Accordingly, Melamid's acts and the resulting consequences create a substantial enough connection with Ohio to make the exercise of jurisdiction over Melamid reasonable.

RC has established by a preponderance of the evidence that the requirements under Ohio's long-arm statute and the Due Process Clause of the Fourteenth Amendment have been satisfied. Therefore, this Court may exercise personal jurisdiction over Melamid.

**B. VENUE**

This case was filed in this Court based on diversity jurisdiction. In such a case, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(a)(2). When making venue determinations in breach of contracts claims, courts consider factors including "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Parenteau v. Century Bank*, No. 2:07-cv-851, 2008 WL 281626 at *3 (S.D. Ohio Jan. 31, 2008) (citing *Gulf Insurance Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)). Where contract negotiations occurred in a particular state, and where the effects of the alleged breach were felt in that state, the "substantial part" requirement of 28 U.S.C. 1391(a) is satisfied. *See, e.g., Cobasys, L.L.C. v. FMP Resistance Welding Supply, Inc.*, No. 07-cv-13736, 2008 WL 162588 at *3 (E.D. Mich. Jan. 17, 2008); *Northwest Ventures, Inc. v. Purewal Enterprises Pvt., Ltd.*, No. 3:06cv-420-h, 2007 WL 101846 at *2 (W.D. Ky. Jan. 8, 2007); *MCNIC Oil & Gas Co. v. IBEX Resources Co., L.L.C.*, 23 F.Supp.2d 729, 239 (E.D. Mich. 1998).

Here, the contract negotiations involved a company located in Ohio, and the bulk of negotiations were conducted through emails, letters, and phone calls exchanged into and out of Ohio; the Letter of Intent and Agreement were drafted in Ohio; the Agreement was signed by RC in Ohio and was sent to Ohio by Melamid after he signed it; the Agreement mandates that Melamid send all required notices, statements, and communications to Ohio for the duration of

the Agreement; and Melamid owes continuing obligations to RC in Ohio, including offering Additional Paintings, passing title to the RC Paintings, providing consent letters to RC, and delivering RC Paintings. These facts are sufficient to establish that a substantial part of the events giving rise to the claim (namely, the location of contract negotiations and the alleged breach) occurred in Ohio. Therefore, venue was proper under 28 U.S.C. § 1391(a)(2).

## C. INDISPENSABLE PARTIES

Melamid claims that the following parties are necessary under Rule 19(a): (1) Russian Collections Management LLC ("RC Management"); (2) Neil K. Rector; (3) Jeffrey Hoffeld; and (4) Forum Gallery, Inc. RC Management is the management company associated with RC. Rector is an insurance consultant who controls both RC and RC Management. Hoffeld is a New York based art expert. Melamid's primary contention is that these parties are necessary because he has filed suit against all of them in state court in New York. The case before this Court, however, involves a simple breach of contract action. The parties to the contract were Melamid and RC. In general, the indispensable parties in a breach of contract action are the parties to the contract. *See Onyx Waste Svcs., Inc. v. Mogan*, 203 F.Supp.2d 777, 787 (E.D. Mich. 2002) (citing *National Union Fire Ins. Co. v. Rite Aid*, 210 F.3d 246, 252 (4th Cir. 2000)). Regardless of any claims Melamid may have filed against other parties in other lawsuits, Melamid has not met his burden of establishing that any of these parties is necessary to this litigation --- there is no impairment to this Court's ability to grant relief on the breach of contract claim without these additional parties, and none of the parties is claiming an interest in the subject matter of this

litigation. Because these parties are not necessary under Rule 19(a), there is no need to conduct the final two steps of the indispensable party analysis.

## V. CONCLUSION

Melamid has provided three potential bases upon which he claims this Court should dismiss the complaint against him. He has been unable to satisfy the requirements for any of those three bases. As a result, his motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

                                               s/Algenon L. Marbley
                                              **ALGENON L. MARBLEY**
                                              **UNITED STATES DISTRICT JUDGE**

**Dated: November 18, 2009**